IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRED BERGMAN HEALTHCARE PTY LTD. And SIMAVITA (AUST) PTY LTD., <br><br> Plaintiffs, <br><br> v. <br><br> SENECA SENSE TECHNOLOGIES INC., <br><br> Defendant. | Case No. 1:22-cv-02167 <br><br> Judge John Robert Blakey |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Fred Bergman Healthcare Pty Ltd. ("Bergman") and Simavita (Aust) Pty Ltd. ("Simavita") (collectively, "Plaintiffs") have sued Defendant Seneca Sense Technologies Inc. ("Seneca Sense" or "Defendant") for direct and contributory patent infringement. Defendant moves to dismiss both infringement claims under Fed. R. Civ. P. 12(b)(6), [39]. For the reasons set forth below, the Court denies Defendant's motion.

**I.  Factual Allegations & Procedural History**

Bergman holds U.S. Patent No. 7,977,529 ("the '529 Patent"), entitled "Incontinence Management System and Diaper." [1-1]. The '529 Patent claims a "unique incontinence management system and sensor design" that includes "a 'smart' incontinence pad or diaper which delivers a host of wellness and well-being indicators including, but not limited to, wetness, ambient temperature, pressure sore

1

management, falls, and many other features and information." [1] ¶ 37. Through a technology license, Bergman allowed Simavita, an international supplier of incontinence management systems, to be "an exclusive licensee" of the patented invention. *Id.* ¶¶ 36, 41. And, for over a decade, Simavita innovated upon the invention with its Smart Incontinence Management (SIM™) technology, designed to replace traditional methods for incontinence monitoring. *Id.* ¶ 13. Simavita's technology claims to "improve the management of incontinence, reduce falls, UTIs, and skin events while increasing quality of life and dignity for the aged." *Id.* The SIM™ technology extends to multiple "smart" products, including SIM™ ASSESS, an incontinence management system that includes a smart diaper with "integrated technology" that "analyzes information about the user's continence status" and pushes that information to a smart tablet device, and SMARTZ™, a daily use smart incontinence management solution. *Id.* ¶ 14.

In May 2011, Simavita executed an "introducer agreement" with 7679149 Canada, Inc. ("7679149 Canada"), whereby 7679149 Canada and its President, Robert Tarasofsky, "agreed to introduce prospective clients to Simavita for the purpose of commercializing Simavita's SIM™ diaper system in Canada, Japan, and the United States." *Id.* ¶ 16. This relationship continued in 2012 with a consultancy agreement between Simavita US, Inc. (Simavita's US-related entity) and 7679149 Canada, resulting in a distribution agreement with U.S. customer Medline Industries, LP ("Medline"). *Id.* ¶¶ 19–20. Under this agreement, Medline distributed Simavita's SIM™ ASSESS system in the U.S. *Id.* ¶¶ 20, 41.

Through the distribution agreement, Tarasofsky and 7679149 Canada gained access to Simavita's confidential information, including intellectual property, which Plaintiffs claim they then exploited: shortly after the parties' relationship ended, another company affiliated with Tarasofsky, Seneca Sense, allegedly "started conducting trials and pilots" of competing incontinence products. *Id.* ¶¶ 22–23, 44. Some of Seneca Sense's products featured Medline's trademark, suggesting that Medline was also in on the exploitation of Plaintiffs' intellectual property. *See id.* ¶¶ 30–34.

On December 9, 2021, Plaintiffs sued Seneca Sense[1] alleging that the company's "WeSense Technology" infringes at least claim 1 of the '529 Patent. *Id.* ¶ 49. Plaintiffs allege that Defendant's products directly infringe the '529 Patent in violation of 35 U.S.C. § 271(a) (count I) and that Defendant's sales of products using the WeSense Technology induces and contributes to infringement by Defendant's customers, in violation of 35 U.S.C. § 271(b) and (c) (count II). *See* [1] ¶¶ 60–65, 75–78. Seneca Sense now moves to dismiss both infringement claims, arguing that the '529 Patent is directed towards patent-ineligible subject matter under 35 U.S.C. § 101 and is therefore invalid as a matter of law. *See* [39-1] at 1.

## II. Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" demonstrating that relief can be granted, FRCP 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon

---

[1] Plaintiff sued in the Eastern District of Virginia, and, on Seneca Sense's motion, the Virginia court transferred the case here on April 22, 2022. *See* [28].

which it rests," *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged misconduct. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Id.* In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-pled allegations as true and draws all reasonable inferences in the plaintiff's favor. *Id.* This Court need not, however, accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

Patents issued by the Patent and Trademark Office (PTO) are presumed valid, and each claim is presumed valid independent of other claims. 35 U.S.C.A. § 282. Therefore, the "burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." *Id.* While patent eligibility under 35 U.S.C. § 101 is an issue of law, the associated inquiry "may contain underlying issues of fact." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) (citing *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1325 (Fed. Cir. 2016)). Courts may determine patent eligibility on a motion to dismiss only when the factual allegations in the complaint, taken as true, allow the Court to resolve "the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). In deciding the issue, courts may consider the patent's claim language and its "character as a whole," as well as the patent's written

4

description. *CardioNet, LLC v. InfoBionic, Inc*, 955 F.3d 1358, 1368 (Fed. Cir. 2020). If, on consideration of the Rule 12(b)(6) motion, issues of claim construction arise, the Court must adopt the "non-moving party's constructions" or "resolve the disputes to whatever extent is needed to conduct the § 101 analysis, which may well be less than a full, formal claim construction." *Aatrix*, 882 F.3d at 1125.

### III. Discussion & Analysis

Defendant moves to dismiss Plaintiff's infringement claims, arguing that the asserted patent is invalid, because it claims patent-ineligible matter.

The Patent Act provides that whoever "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor." 35 U.S.C. § 101. Yet, courts have long recognized three limits on the statutory rule to pre-empt the monopolization of "the basic tools of scientific and technological work," *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (citing *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66 (2012)), namely, that the "laws of nature, natural phenomena, and abstract ideas" are not patentable. *Diamond v. Diehr*, 450 U.S. 175, 185 (1981).

Inventions embodying such limitations are not automatically rendered ineligible for patent protection, however; rather, applications of abstract concepts "to a new and useful end" "remain eligible for patent protection." *Alice*, 573 U.S. at 217. Thus, to determine patent eligibility, courts must first "'determine whether the claims at issue are directed to' a patent-ineligible concept," *Berkheimer v. HP Inc.*,

881 F.3d 1360, 1366 (Fed. Cir. 2018) (quoting *Alice*, 573 U.S. at 217), and, if they are, the court must then examine the elements of each claim "individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Berkheimer*, 881 F.3d at 1366 (quoting *Mayo*, 566 U.S. at 78–79).

### A. The Representative Nature of Claim 1

As a preliminary matter, the Court finds that independent claim 1 may be analyzed as "representative" of dependent claims 2 through 61 for purposes of analyzing patentable subject matter eligibility under § 101.

Claims may be treated as representative when the patentee "does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim" or upon agreement of the parties to treat a claim as representative. *Berkheimer*, 881 F.3d at 1365. Likewise, claims may be analyzed as "representative" when other claims are "substantially similar and linked to the same abstract idea" of another claim. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

Having reviewed the claims of the '529 Patent, the Court finds *Content Extraction* applicable: dependent claims 2–61 are intended to be substantially linked to the "system" claimed in claim 1. As Defendant correctly notes, claims 2 through 61 recite the idea of claim 1 with limitations associated with the qualities and desired results of sensor signals, the processor configurations, and the data fed to the processor. Claim 1's broad language maps directly to dependent claims that load

functional value to the claimed system.² Plaintiffs argue, that claims 23 and 42, by way of example, are substantially dissimilar. But the additional sensors in dependent claim 23 presumably fall within the "one or more sensor signals indicative of the presence of wetness in an absorbent article" as recited in claim 1. [1-1] at 19:45–46. And claim 42, which recites a physical diaper with a sleeve for insertion of a urinalysis reagent strip, remains claimed strictly within the context of the moisture monitoring system recited in claim 1. For these reasons, the Court finds, at least for present purposes, that the cited claims are not substantially dissimilar from independent claim 1, and that claim 1 may be viewed as representative.

    **B.    The *Alice* Inquiry**

Having determined that claim 1 is representative, the Court turns to the two-step inquiry prescribed in *Alice*.

    **1.    *Alice* Step One — Abstract Idea Analysis**

On an eligibility challenge, the Supreme Court instructs that the Court must "first determine whether the claims at issue are directed to a patent-ineligible concept." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016); *Alice*, 573 U.S. at 218.

Defendant argues that claim 1 of the '529 Patent is directed towards the "abstract idea" of "receiving and analyzing data to characterize a 'wetness event'."

---

² For example, claim 14—claiming a monitoring system that performs (ostensibly via "processor") recognition and prediction of "the occurrence of lingering wetness in a region of an absorbent article."—is substantially linked to the desired functionality of the processor claim 1 ("wherein the processor executes an algorithm to analyze the one or more sensor signals."). '529 Patent at 21:3–6, 19:49–50. Additionally, claim 8—claiming a monitoring system with a user interface that can wirelessly transmit sensor signals that indicate wetness volume—is substantially linked to the idea of the user interface in claim 1 ("user interface for communicating with a user of the system"). [1-1] at 20:43–47, 19:48.

[39-1] at 6. In support, Defendant emphasizes the "generic" nature of the system recited in claim 1, highlighting that, in essence, the claim comprises "only three components: an input, a processor, and a user interface." *Id.* at 7. The "input" is claimed as "receiving one or more sensor signals indicative of a presence of wetness." Critically, neither the sensor itself, the underlying sensor technology, nor the device associated with the input is explicitly claimed. [1-1] at 19:45–46. A "processor" is functionally claimed to "execute an algorithm" that analyzes sensor signals through "applying the one or more received sensor signals to a pre-determined mathematical model." [1-1] at 19:50. The "user interface" is claimed broadly for generally "communicating with the user." [1-1] at 19:48. Viewed collectively, the claimed system represents a tripart framework that collects (via input), analyzes (via processing), and displays (via a user interface) relevant information to characterize a wetness event.

In deciding whether a particular invention constitutes an "abstract idea," courts often "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). By way of example, "fundamental economic and conventional business practices are often found to be abstract ideas, even if performed on a computer." *Enfish*, 822 F.3d at 1335 (citing *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362–63 (Fed.Cir. 2015)). The Supreme Court "has suggested that claims 'purporting to improve the functioning of the computer itself,' or 'improving an

existing technological process' might not succumb to the abstract idea exception." *Enfish*, 822 F.3d at 1335 (quoting *Alice*, 573 U.S. at 223, 225).

In *Elec. Power Grp., LLC v. Alstom S.A.*, the Federal Circuit held that claims focused upon "collecting information, analyzing it, and displaying certain results of the collection and analysis," fell solidly within the realm of abstract ideas. 830 F.3d 1350, 1353 (Fed. Cir. 2016). More specifically, the court held that: collecting information, "including when limited to particular content (which does not change its character as information)," constitutes an abstract idea; similarly, "analyzing information by steps people go through in their minds, or by mathematical algorithms, without more," remains "essentially mental processes within the abstract-idea category"; and "merely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis." Id. at 1343–54 (citations omitted). In that case, the advance the asserted claims "purport to make is a process of gathering and analyzing information of a specific content, then displaying the results, and not any particular assertedly inventive technology for performing those functions. They are therefore directed to an abstract idea." *Id.* at 1354.

So too here. Although the claimed invention purports to improve the incontinence management process through the integration of certain computing technologies into a broader system, it does not advance "any particular assertedly inventive technology for performing those functions" and does not purport to provide

9

"improvements to computer *functionality*" of any technological components that may be a part of this system.

In arguing that their patent is not directed to an abstract idea, Plaintiffs rely heavily upon *CardioNet, LLC v. InfoBionic, Inc*, 955 F.3d 1358 (Fed. Cir. 2020). In *CardioNet*, independent claim 1 of the '207 Patent claimed a tangible "device" comprised of discrete elements, each with specific, enumerated functions that provided technological improvements upon cardiac monitoring technology: "a beat detector to identify a beat-to-beat timing of cardiac activity;" "a ventricular beat detector to identify ventricular beats in the cardiac activity;" and "an event generator to generate an event when the variability in the beat-to-beat timing is identified" in conjunction with variability and relevance determination logic. *CardioNet*, 955 F.3d at 1365. The Federal Circuit found that the claimed invention was not a patent-ineligible abstract idea under *Alice* because the '207 Patent's claims were "directed to an improved cardiac monitoring device" that focused on "a specific means or method that improves" the technology itself. *Id.* at 1368. (quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)). Crucially, the claims were not "directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *Id.*

In contrast, the patent at issue in this case claims a system designed for the purpose of enhancing the monitoring of wetness events; it does not specify, beyond generic processes and features, how that goal is furthered. Plaintiffs argue that the "tangible" nature of the claimed elements—the physical "input, processor, and user

10

interface" to comprise the "moisture monitoring system"—anchor the claim in concrete, patent-eligible terms. *See* [45] at 11-12.

Yet, as Defendant notes, the physical nature of claimed elements does not immediately provide safe harbor from the abstract idea inquiry. *See* [46] at 1–2. Consistent with the Federal Circuit's interpretation, components referenced in claim 1 appear to "provide a generic environment in which to carry out the abstract idea" of increasing the efficiency and experience with the integration of algorithms embedded in a mathematical model. *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016). The specification and dependent claims describe what these tangible conventions *may* be configured to do, but not what they *must* do. *See, e.g.*, [1-1] at 19:44–45 (noting that the "input" claimed *must* include the function of "receiving one or more sensor signals," but improved capabilities of the sensor itself remain unclaimed) (emphasis added); *id.* at 20:4–7 (noting the system uses received sensor variables from one or more signals and applies them to "optimize the [unclaimed] mathematical model"); *id.* at 24:20–25 (claiming a system that is "configurable to adapt an [unclaimed] mathematical model" that characterizes wetness events using new sensor type and elements); *id.* at 24:26–30 (claiming the monitoring system that is configured to automate data receipt from the input to the processor).

Plaintiffs' claimed system thus appears to constitute a combination of elements that seeks to capture and analyze data in the context of incontinence management. Although the patent specification cites the need for automatic and increased

11

information concerning incontinence events, "the need to perform tasks automatically is not a unique technical problem." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1316 (Fed. Cir. 2019). All of which suggests that the '529 Patent may be directed to an abstract idea.

Plaintiffs assert that the technology system of the '529 Patent is more akin to a tangible set of components (similar to, say, a tangible stereo system). [1-1] ¶¶ 37–39; [45] at 11–12. But the language of the claims instead indicates a system for managing incontinence disconnected from a specific series of tangible components, so long as some combination of claimed functionalities may be included (similar to, say, an ecosystem or system of procedures or actions). At this stage, the Court need not decide this issue definitively because, as discussed below, Plaintiffs' claims survive the current motion, at a minimum, under *Alice*'s step two.

### 2. *Alice* Step Two – Inventive Concept Analysis

At step two of the *Alice* framework, the Court asks whether the claimed elements "individually and as an ordered combination" elevate the abstract idea to an inventive concept. *Alice*, 573 U.S. at 217 (internal quotation marks omitted). If claimed elements or claimed combinations of those elements are "well-understood, routine, [and] conventional activity previously engaged in by researchers in the field," they do not amount to an inventive concept. *Mayo*, 566 U.S. at 73.

Significantly, if a patentee adequately alleges plausible, specific, facts demonstrating that the challenged claims recite inventive concepts, it can survive a § 101 eligibility analysis on a motion to dismiss. *Aatrix*, 882 F.3d at 1126–28. *See*

12

*also Cellspin*, 927 F.3d at 1317 (noting that "plausible and specific factual allegations that aspects of the claims are inventive are sufficient" and clarifying further that "[a]s long as what makes the claims inventive is recited by the claims, the specification need not expressly list all the reasons why this claimed structure is unconventional").

Plaintiffs' allegations advance several specific ways in which the '529 Patent unconventionally improves upon prior art "to improve efficiency in monitoring and management of continence with minimal changes in care practices." *See* [1-1] at 3:8–10. Plaintiffs assert that their "unique" incontinence management system provides "improved information" that "avoids unnecessary manual checking." [1] ¶ 37. The complaint asserts that the technology platform built atop the '529 Patent meets a "clear unmet market need" to provide a low-cost product to the growing U.S. market for "adult incontinence pads," disrupting "a market that has seen limited innovation over the past two decades." [1] ¶ 42.

Regarding functionality, the '529 Patent asserts that existing incontinence indicators and detection systems "have done little to improve the current situation in which carers must manually and regularly check patients for wetness," and fail to distinguish the type and extent of those events. [1-1] at 2:50–55. Additionally, the specification asserts that current incontinence management system user interfaces fail to alert caregivers to the "degree of wetness present" in an incontinence event, consequently wasting caregivers' time and efficiency by triggering alerts for "very small volume of urine or perspiration." *Id.* at 2:55–61. The specification also cites practical improvements over prior art, asserting that current incontinence

13

management systems are "expensive," "difficult to manufacture," and contain "complicated circuitry" incompatible with largely-disposable diapers. *Id.* at 2:63–64. Accepted holistically, the record demonstrates that the claimed elements move beyond what has conventionally been considered by those skilled in the art.

Plaintiffs also assert that the '529 Patent claims the improvement of a technological process (namely, the improvement of incontinence management technology), not simply an improvement in computational accuracy (the latter being a distinction the Federal Circuit has previously rejected, *see In re Bd. of Trustees of Leland Stanford Junior Univ.*, 991 F.3d 1245, 1251 (Fed. Cir. 2021) (explaining that "improvement in computational accuracy does not qualify as an improvement to a technological process; rather, it is merely an enhancement to the abstract mathematical calculation")).

Accepting the allegations in the complaint and the assertions in the specification as true, the Court cannot, at this stage, conclude that the claimed invention lacks inventive concept. Both *BASCOM Glob. Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016), and *Cellspin* inform this conclusion. In *BASCOM*, the Federal Circuit found that the "limited record" provided at the pleading stage did not persuasively demonstrate that a specific placement of a filtering tool was "conventional or generic." *See BASCOM*, 827 F.3d at 1350–51 ("an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces").

14

Similarly, in *Cellspin*, the Federal Circuit concluded that, based upon the pleadings, it could not make factual determinations on the inventiveness of combining conventional pieces. *Cellspin*, 927 F.3d at 1318–19. Cellspin "did more than simply label [its data transmission] technique as inventive;" it directed the Federal Circuit to evidence intrinsic to the record to substantiate the unconventional nature of the invention, and such evidence was enough at the motion to dismiss stage. *Id.* So too here. Based upon the pleadings and intrinsic evidence discussed above, the Court cannot say that the claimed invention fails to elevate any abstract idea to an inventive concept.

### IV. Conclusion

For the reasons explained above, the Court denies Defendant's motion to dismiss [39]. Defendant shall answer the complaint by October 10, 2023, and the parties shall file a joint status report by October 30, 2023 proposing reasonable case management dates. If at any time the parties agree that a settlement conference with the assigned Magistrate Judge could be productive, they should call chambers to so advise, and the Court will enter an appropriate referral order.

Dated: September 30, 2023

Entered:

_____
John Robert Blakey
United States District Judge

15